**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DAVID HELWIG, on Behalf of Himself and All Others Similarly Situated**<br><br>Plaintiff,<br><br>vs.<br><br>**WALGREEN CO., an Illinois corporation,**<br><br>and<br><br>**WALGREENS BOOTS ALLIANCE, INC., a Delaware corporation headquartered in Illinois,**<br><br>Defendant. | CASE NO.<br><br>JUDGE |

**CLASS ACTION COMPLAINT**
**(Jury Demand Endorsed Hereon)**

## NATURE OF THE ACTION

1. This class action seeks relief under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* on behalf of individuals who were the subject of consumer reports used by Defendants (collectively, "Walgreens") to evaluate job applicants between March 2017 and the present (the "Class Period").

## PARTIES

2. Helwig is and has been a resident of Lorain County, Ohio during all periods relevant to this complaint and is a "consumer" as defined by 15 U.S.C. § 1681a.

3. Defendant Walgreens Boots Alliance, Inc. is incorporated in Delaware with its principal place of business at 108 Wilmot Road, Deerfield, Illinois. Walgreens Boots Alliance, Inc. is the parent company of Defendant Walgreen Co.

4. Defendant Walgreen Co. is an Illinois corporation headquartered at 200 Wilmot Road, Deerfield, Illinois. Walgreen Co. is a wholly-owned subsidiary of Walgreens Boots Alliance, Inc.

5. Walgreens employs over 300,000 people who work at home and at pharmacies and drugstores throughout the United States and abroad.

6. Further, Walgreens is a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers," in the Northern District of Illinois as those terms are defined by 15 U.S.C. § 1681a.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in the Northern District of Illinois because Walgreens is subject to personal jurisdiction in this District, purchases consumer reports in this District, and takes adverse action against job applicants within this District. 28 U.S.C. § 1391(b) and (c).

## FACTUAL ALLEGATIONS

9. Among other things, the FCRA regulates the collection, maintenance, and disclosure of public record information by consumer reporting agencies ("CRAs").

10. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

11. During the Class Period, Walgreens purchased consumer reports from First Advantage Corporation ("First Advantage"), a consumer reporting agency, which were used as a basis for evaluating and taking adverse action against job applicants.

12. The FCRA mandates that an employer, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the consumer's report and a summary of the consumer's rights under the FCRA along with an opportunity to address any derogatory information in the consumer report.

13. Walgreens's employee screening process is inherently flawed, such that it fails to comply with the pre-adverse action requirements under 15 U.S.C. 1681b(b)(3). Worse, Walgreen's employee screening process is automated, which leads to systemic violations of the FCRA.

14. Walgreens's repeated violations of the FCRA have been willful, wanton and reckless in that Walgreens knowingly or recklessly disregarded its statutory duty to comply with the requirements of the FCRA.

15. Moreover, the FCRA requirements set forth herein have been the subject of numerous appellate court decisions, as well as staff opinions published by the Federal Trade Commission ("FTC").

16. Additionally, First Advantage provides clients like Walgreens with free resource materials, newsletters and online webinars regarding FCRA compliance, which Walgreens has chosen to disregard.

17. Title 15 U.S.C. § 1681n(a) permits a consumer to recover statutory damages, along with attorney fees and costs for willful violations of the FCRA.

## **HELWIG'S EXPERIENCE**

18. In or about December 2021, Helwig applied for employment with Walgreens online.

19. On December 15, 2021, Walgreens offered Helwig fulltime employment as a Work from Home Call Center Specialist with a targeted start date of January 6, 2022. The offer was contingent on passing a background check.

20. Walgreens contracts with First Advantage to conduct background checks on applicants like Helwig who are offered employment.

21. This process is generally completed by the applicant online, and the results are made available to Walgreens either instantaneously or within a few days.

22. On December 23, 2021, First Advantage completed Helwig's consumer report for Walgreens's review.

23. On that *same* day, Walgreens sent *two* emails to Mr. Helwig six minutes apart rescinding its job offer and rejecting his employment (the "Rejection Emails").





24. The Rejection Emails unequivocally communicate to Helwig that he has been denied employment with Walgreens without any reference to why the denial occurred. Walgreens also instructs Mr. Helwig that he cannot reapply for two years.

25. Later, Mr. Helwig became aware of a form letter dated December 23, 2021 and sent by First Advantage bearing Walgreens logo that stated "[a] decision is currently pending

5

concerning your application for employment with our company…We may take adverse action related to your employment with us based on information in the enclosed consumer report and we ask that you carefully review it." Although the letter purported to suggest that Walgreens was still considering Mr. Helwig's employment, the Rejection Emails made clear that Mr. Helwig's job opportunity had already been lost.

26. Put simply, the Rejection Emails confirmed that Walgreens had already pursued other candidates for his position, and that he was powerless to explain or contextualize any information in his background report.

27. On information and belief, Walgreens relied on a nearly two decades old felony conviction when Mr. Helwig misused his father's credit cards as a 19-year-old to deny him employment. Mr. Helwig made full restitution to his father and has no other felony convictions.

28. The form letter used by Walgreens, allegedly sent to rejected applicants around the same time as the Rejection Emails, is illusory and serves only to fabricate Walgreens's compliance with the FCRA. Any subsequent communications provided by First Advantage are meaningless—Walgreens unequivocally advises applicants that the job opportunity is lost and there is nothing the candidate can do to salvage it. Indeed, the candidate is instructed not to apply again for two years.

29. On information and belief, the Rejection Emails are part of Walgreens's automated process for denying applicants based on information in a background report. Once Walgreens receives an applicant's background report containing derogatory background information, it immediately and unequivocally rejects the applicant from employment. Walgreens does not provide the applicant with an opportunity to respond or dispute the information contained in his or her background report.

6

30. This adverse action process does not comply with the FCRA's requirements under 15 U.S.C. § 1681b(b)(3)(A). By uniformly rejecting applicants based on an automated process, applicants are deprived of a meaningful opportunity to contest the information contained in the background. *E.g.*, *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625-633 (D. Or. 2015) ("to comply with the statute, an employer who intends to take adverse action against an applicant must give the applicant an opportunity to change the employer's mind. This opportunity must be real; a *pro forma* period between the preliminary and final decision does not satisfy the statute."); *and Robertson v. Allied Solutions, LLC*, 902 F.3d 690, 697 (7th Cir. 2018) (finding concrete injury when plaintiff is not provided pre-adverse action notice under § 1681b(b)(3)(A) and an opportunity to address information contained on background check).

31. This backwards approach is wholly inconsistent with the FCRA, and Walgreens knows (or should know) it. Walgreens's repeated failures to comply with the straightforward obligations under 15 U.S.C. § 1681b(b)(3)(A) constitute willful violations entitling Helwig and the class members to relief under 15 U.S.C. § 1681n.

## COUNT I – VIOLATION OF 15 U.S.C. § 1681b(b)(3)
*Class Claim*

32. Helwig restates and incorporates the allegations set forth in the preceding paragraphs.

33. In accordance with Rule 23 of the Federal Rules of Civil Procedure, Helwig brings this claim for himself and on behalf of a class defined as follows:

> All individuals residing in the United States that were the subject of a consumer report requested by Walgreens, which Walgreens relied on to take an adverse employment action during the five-year period preceding this action and through the date of class certification.

34. On information and belief, the putative class numbers well over 1,000 individuals,

thus the class is so numerous that joinder of all members is impracticable. Information concerning the exact size of the putative class is within the exclusive possession of Walgreens.

35. Helwig's claims are typical of the claims of the other class members as all members were similarly harmed by Walgreens's failure to comply with the FCRA's pre-adverse action requirements. Like Helwig, each class member suffered an adverse employment action based on a consumer report without any opportunity to address the derogatory report prior to suffering adverse action.

36. Helwig will fairly and adequately protect the interests of the class members and has retained counsel competent and experienced in complex FCRA class action litigation. Helwig is a member of the class he seeks to represent and does not have any interests antagonistic or in conflict with the class. Indeed, Helwig's claims are the same as those of the other class members, which arise from the same operative facts and legal theories.

37. Common questions of law and fact exist as to all class members, and these common questions predominate over any questions affecting individual class members, including:

   a. Whether Walgreens provides rejected applicants with a copy of the consumer report *prior* to taking adverse employment action;

   b. Whether Walgreens provides rejected applicants with a summary of the applicant's FCRA rights *prior* to taking adverse employment action;

   c. Whether Walgreens provides applicants with a reasonable opportunity to dispute or explain the information contained in their background report prior to taking adverse employment action; and

   d. Whether Walgreens's actions constitute a willful violation of the FCRA.

38. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Walgreens's conduct stems from common policies and practices resulting in common violations of the FCRA. Class certification will obviate the need for unduly

duplicative litigation that might result in inconsistent judgments concerning Walgreens's practices. Moreover, the management of a class action here does not present any likely difficulties and will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single set of proof.

39. The conduct, action, and inaction of Walgreens was willful, rendering it liable for statutory and/or actual damages along with punitive damages in an amount to be determined under 15 U.S.C. § 1681n. Accordingly, Walgreens is liable to Helwig and each class member for statutory damages (or actual damages), punitive damages, and for attorney fees and costs. Alternatively, Walgreens's violations were negligent, and Helwig seeks issue certification based on Walgreens's negligence under Fed. R. Civ. P. 23(c)(4).

**WHEREFORE**, Helwig and the putative class request the following relief:

a. That an order be entered certifying the proposed class under Fed. R. Civ. P. 23 and appointing Helwig and the undersigned counsel to represent the class;

b. That judgment be entered for the proposed class against Walgreens for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

c. Alternatively, that the Court certify the class, under Fed. R. Civ. P. 23(c)(4) on the issue that Walgreens's FCRA violations were negligent under 15 U.S.C. § 1681o;

d. Attorney's fees, expenses and costs under 15 U.S.C. §§ 1681n and 1681o; and

e. Any other relief this Court deems equitable and just.

                                                  Respectfully Submitted,

                                                  O'TOOLE, McLAUGHLIN, DOOLEY
                                                  & PECORA CO., LPA

                                                  /s/ Patrick M. Ward
                                                  Matthew A. Dooley (OH 0081482)*
                                                  Patrick M. Ward (IL 6284215; OH 0095420)

Stephen M. Bosak, Jr. (OH 0092443)*
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone: (440) 930-4001
Facsimile: (440) 934-7208
Email: mdooley@omdplaw.com
pward@omdplaw.com
sbosak@omdplaw.com
*Counsel for Plaintiff and the putative class*

*\* Admission pending*

**TRIAL BY JURY IS DEMANDED**

/s/ Patrick M. Ward
*Counsel for Plaintiff and the putative class*