**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DAVID HELWIG, on Behalf of Himself and All Others Similarly Situated,** | |
| Plaintiff, | CASE NO. 1:22-cv-01670 |
| vs. | JUDGE JOHN F. KNESS |
| **WALGREEN CO., et al.** | |
| Defendants. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT, AWARD OF ATTORNEY FEES AND LITIGATION EXPENSES,
AND SERVICE PAYMENT TO NAMED PLAINTIFF**

Plaintiff David Helwig moves the Court under Fed. R. Civ. P. 23 for an order granting final approval of the class action settlement, awarding a service payment to Helwig, awarding Class Counsel's requested fees and costs, and approving the final administration of the settlement. A memorandum in support is attached and incorporated herein.

Respectfully submitted,

DOOLEY, GEMBALA, McLAUGHLIN
& PECORA CO., LPA

By: /s/ Matthew A. Dooley
Matthew A. Dooley (OH 0081482)
Stephen M. Bosak (OH 0092443)
Patrick M. Ward (IL 6284215; OH 0095420)
Michael R. Briach (OH 0097986)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone:    (440) 930-4001
Facsimile:    (440) 934-7208
Email:        mdooley@dooleygembala.com

sbosak@dooleygembala.com
pward@dooleygembala.com
mbriach@dooleygembala.com
*Counsel for Helwig and the Class*

## TABLE OF CONTENTS

Table of Contents.................................................................................................i

Table of Authorities............................................................................................ii

Memorandum in Support....................................................................................1

    I.      Overview.............................................................................................1

    II.     Final Approval Process........................................................................3

    III.    The Settlement Notice Process Should be Approved by the Court...............5

    IV.    The Settlement is Fair, Reasonable, and Adequate....................................7

        A.  Strength of the Case.......................................................................7

        B.  Likely Complexity, Length, and Cost of Further Litigation...................9

        C.  Class Counsel's Opinion............................................................10

        D.  Stage of the Proceeding & Discovery.............................................11

        E.  Reaction and Opposition of the Class Members..................................11

    V.    The Court Should Approve Plaintiff's Requested Service Payment and Class Counsel's Requested Fees and Costs...............................................12

        A.  Helwig's Requested Payment for His Service as Class Representative is Reasonable................................................................................12

        B.  The Court Should Award Class Counsel Requested Attorney Fees and Litigation Expenses....................................................................13

            i.   Class Counsel's Award is Reasonable Because the Class Members Have Received Nearly the Maximum Damages Allowed by Law...................................................................14

            ii.  Class Counsel's Award is Reasonable Under the Percentage-of-the-Fund Measure.....................................................................16

        C.  Class Counsel's Requested Reimbursement for Litigation Expenses Should be Approved.............................................................20

    VI.    Conclusion..........................................................................................21

i

## TABLE OF AUTHORITIES

### Cases

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09C910, 2011 U.S. Dist. LEXIS 48323, at \*13 (N.D. Ill. May 5, 2011) ................................................................ 9

*Allen v. JPMorgan Chase Bank, NA*, 13-cv-8285 (N.D. Ill. Oct. 21, 2015) ...................... 17

*Armstrong v. Bd. of Sch. Dir.'s of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980) 4, 10

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 480, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) .................................................................................................... 18, 19, 20

*Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09 C 5601, 2015 U.S. Dist. LEXIS 95918, at \*2 (N.D. Ill. July 23, 2015) ............................................................... 18

*Briggs v. PNC Fin. Servs. Grp.*, No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at \*6 (N.D. Ill. Nov. 29, 2016) ........................................................................... 12, 13

*Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314, 2016 WL 5107202, at \*8 (D.D.C. Aug. 26, 2016) ................................................................................................ 6

*Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, \*1 (S.D. Ill. May 14, 2021) ..................................................................... 4, 18, 19

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ......................................... 4

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985) ...................... 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974) ................................... 7

*Erheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ................................ 4

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012) ...................... 12

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) .................................................. 4

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) .................. 16

*Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ......................................... 16, 17

*Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 237 (N.D. Ill. 2016) ................ 17

*George v. Kraft Foods Glob., Inc.*, No. 1:08-cv-3799, 2012 U.S. Dist. LEXIS 166816, at \*8 (N.D. Ill. June 26, 2012) .................................................................... 17

*Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ....................................... 10

*Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at \*35 (S.D. Ill. Dec. 13, 2018) .........................................................17

*In re AT&T Mobility Wireless Data Servs. Litig.*, 270 F.R.D. 330, 347, 350 (N.D. Ill. 2010) ........................................................................................................ 8, 10, 11

*In re Automotive Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at \*9 (E.D. Mich. Aug. 9, 2016) ................................................................................. 7

*In re Capital One*, 80 F.Supp. 3d at 792 ......................................................................... 12

*In re Comdisco Sec. Litig.*, 150 F.Supp.2d 943, 948 n.10 (N.D. Ill. 2001)...................... 16

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litigation*, N.D.Ill. No. 06 C 7023, 2016 U.S. Dist. LEXIS 25290, at \*25-26 (Feb. 29, 2016)........................... 10

*In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) ..................................................... 6

*In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, (N.D. Ill. Aug. 26, 2013) .......................................................................................... 12, 13

*In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-980 (7th Cir. 2003) ............................. 16

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716008) (D. Minn. Feb. 27, 2013) ......................................................................................... 7

*International Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 533, 26 L. Ed. 1157 (1982) ............................................................................................................20

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ................................................................. 4

*Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404, 406 (N.D. Ill. 2012)... 5

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015) ...................................11, 17

*Leung*, 326 F.R.D. at 199...............................................................................................passim

*Levitt v. Southwest Airlines Co. (In re Southwest Airlines Voucher Litig.)*, 799 F.3d 701, 711, 712 (7th Cir. 2015)...............................................................................13, 14, 20

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 834 F.2d 677, 680 (7th Cir. 1987) ..11

*Martin v. Caterpillar Inc.*, No. 07-cv-1009, 2010 U.S. Dist. LEXIS 145111, at \*15 (C.D. Ill. Sep. 9, 2010) ..........................................................................................20

*Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016)............................................................ 7

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007)............. 19

*McKinnie v. JP Morgan Chase Bank*, N.A., 678 F.Supp.2d 806, 815 (E.D.Wis.2009) . 18, 19

*Pearson v. NBTY, Inc.,* 772 F.3d 778, 781 (7th Cir. 2014)................................................. 18

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812-13 (1985)........................................... 5

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06C4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ........................................................................... 9

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002)............................ 3

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ......................................................... 8

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) ..... 18

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) .................... 10, 16

*Southwest*, 799 F.3d at 712 ............................................................................................ 15

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) ....... 8

*Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) ........................................ 17

*Vergara v. Uber Techs., Inc.*, 15-cv-6942 (N.D. Ill. Feb 26, 2018).................................. 17

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999)............. 19

*Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *10 (S.D. Ill. Nov. 22, 2010) ............................................................................................... 16

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)..... 19

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *55 (N.D. Ill. Aug. 29, 2016)............................................................................................... 17

## Other Authorities

7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1797.6 (3d ed. 2012) ... 5

15 U.S.C. § 1681n ......................................................................................................... 8, 16

iv

15 U.S.C. § 1681n(a) ............................................................................... 8

Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) . 3, 4, 18

Federal Judicial Center, *Manual for Complex Litig.* § 21.312 (4th 2004) ........................ 5

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rᴇᴠ. 1303, 1333 (2006) ........................................... 13

## Rules

Fed. R. Civ. P. 23(b)(3) ................................................................. 5, 7

Fed. R. Civ. P. 23(c)(2) ................................................................. 5, 7

Fed. R. Civ. P. 23(e) .................................................................... 3, 5

Fed. R. Civ. P. 23(e)(2) .................................................................... 3

Fed. R. Civ. P. 23(h) ................................................................. 13, 20

## MEMORANDUM IN SUPPORT[1]

### I.      OVERVIEW

This matter arose out of Named Plaintiff David Helwig's March 30, 2022 Complaint alleging that Walgreen Co. and Walgreens Boots Alliance, Inc. (collectively, "Defendants" or "Walgreens") willfully violated Section 1681b(b)(3) of the Fair Credit Reporting Act ("FCRA") by failing to comply with certain notice requirements when using a consumer report to make employment decisions. (*See generally,* Doc. 1, Pl.'s Complaint).

After extensive discussions about the merits of the claims, and informal discovery sufficient to inform each side of the strengths and weaknesses of their respective positions, the parties agreed to an in-person mediation with Rodney A. Max almost one year later on January 31, 2023.[2] Although both sides negotiated in good faith the entire day, an agreement could not be reached. Nonetheless, Mr. Max continued to facilitate discussions over the following months that ultimately led to a compromise on June 9, 2023 embodied in the Stipulation of Settlement.

Helwig believes his claims have merit and that if the case did not settle, he would prevail at trial. Walgreens takes the opposite view and denies that it ever violated the FCRA with respect to Helwig or any of the Class Members, such that it has entered into the settlement to avoid future litigation expenses arising out this matter. Regardless, it

---

[1] All defined terms shall have the same meaning used in the Stipulation of Settlement (Doc. 35-2).

[2] Mr. Max is a well-respected neutral who has mediated many FCRA class action cases in the past and is familiar with the legal arguments often made in support or defense of such claim. See https://www.uww-adr.com/biography/rodney-a-max (last visited July 16, 2024).

is understood that if the case proceeded to trial and Helwig failed to prove that Walgreens willfully violated the FCRA, his claims on behalf of the Class Members would fail, and he, along with any potential class members, would not be entitled to *any* monetary relief. Conversely, if Helwig did prevail at trial and demonstrated that Walgreens willfully violated the FCRA, then he and any potential class members could each recover statutory damages between $100 and $1,000, plus attorneys' fees and potentially punitive damages.

Having found common ground in the Stipulation of Settlement, Helwig filed his Unopposed Motion for Preliminary Approval on June 12, 2023. (Doc. 35). On March 29, 2024, the Court preliminarily approved the settlement finding the terms of the Stipulation to be within the range of approval as fair, adequate, and reasonable. (Doc. 46, p. 1). Further, the Court found that the settlement resulted from arm's-length negotiations conducted after Helwig and Class Counsel adequately investigated the claims and became familiar with the strengths and weaknesses of their arguments; the assistance of Mr. Max as a neutral supports the conclusion that the settlement is non-collusive and reasonable; and, the settlement is presumptively valid, subject only to any objections that may be raised pursuant to the terms of the Settlement Agreement. (*Id.* at p. 2).

Ultimately, the Court certified the following Settlement Class:

> Any applicant for employment with Walgreen Co., who, during the Class Period, (i) was rejected from employment due to the results of a criminal background check, and (ii) received one or both of the Disposition Emails between the date on which they received a pre-adverse action notice and the date on which they received a final adverse action notice, but specifically does not include those individuals who timely opt-out of the Settlement.

(*Id.* at p. 3).

Following the Court's preliminary approval order, the Settlement Administrator, American Legal Claims Services ("ALCS"), engaged in a robust notice process designed to provide the best practicable notice to the Class Members. (*See* **Exhibit A** *attached, generally*, Declaration of Demetrius Jenkins, Settlement Administrator). Indeed, ALCS was able to reach over 98% of Class Members via regular or electronic mail. **Only one Class Member opted out, and none objected**. (*Id*. at ¶¶6-11.).

While all Class Members are automatically entitled to an award of $100, those Class Members who submitted a complete, valid, and timely Claim Form would receive an additional award paid on a pro rata basis. (Stipulation of Settlement §1.42). The Class Notice instructed Class Members who wished to receive the additional award to submit their claim by May 23, 2024. (Jenkins Decl. ¶ 9). Should the number of claims not reach the threshold defined in the Settlement, the Differential Amount, shall be used to pay any Settlement Administration Expenses to the extent the costs exceed $27,222.00, and then shall be sent to a mutually agreed *cy pres*. (Doc. 35-2 § 1.42(b)).

As of June 4, 2024, ALCS received 313 valid claim forms through the online portal and U.S. mail. Thus, those Class Members will receive a total of $988.00.

## II.    FINAL APPROVAL PROCESS

Under Fed. R. Civ. P. 23(e)(2), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). A presumption of fairness arises when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002).

3

Fundamentally, courts favor settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also* Conte, *supra* at § 11.41 ("By their very nature, because of the uncertainty of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."). Indeed, "[s]ettlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dir.'s of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Erheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements in "class actions...where substantial judicial resources can be conserved by avoiding formal litigation."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same); Conte, *supra* at § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The final approval process involves three steps: (1) notice of the settlement to the class after preliminary approval; (2) an opportunity for class members to opt out of, or object to, the proposed settlement; and (3) a subsequent hearing where the court grants final approval upon finding that the settlement is fair, reasonable, and adequate. *Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, *1 (S.D. Ill. May 14, 2021).

### III. THE SETTLEMENT NOTICE PROCESS SHOULD BE APPROVED BY THE COURT.

In class actions certified under Rule 23(b)(3),[3] notice must meet the requirements of Rule 23(c)(2) and 23(e). Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The Rule also requires that the notice inform potential class members that: (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, *Manual for Complex Litig*. § 21.312 (4th 2004). Courts have "nearly complete discretion" as to the manner of service of the settlement notice. *See, e.g., Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404, 406 (N.D. Ill. 2012); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812-13 (1985) (direct notice satisfies due process); *see also* 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1797.6 (3d ed. 2012).

To accomplish class notice, Defendants provided ALCS with a mailing list of 2,604 Class Members eligible to receive settlement benefits, which included their names, street addresses, email addresses, phone numbers, and Social Security Numbers (the "Class List"). (*See* Jenkins Decl. at ¶ 3). ALCS independently reviewed the data and determined no duplicate records were contained therein. (*Id.*). ALCS then used several additional methods, including USPS's National Change of Address database and skip-tracing, to ensure the most accurate addresses for the Class Members. (*Id.*).

---

[3] Unless otherwise noted, all references to "Rule" mean the Federal Rules of Civil Procedure.

On April 23, 2024, ALCS emailed the Class Notice, substantially in the form approved by the Court, to 2,300 Class Members for whom an email address was available. (*Id.* at ¶ 4). For the 304 remaining Class Members without email addresses, ALCS sent the Class Notice via first-class United States mail to the listed street address. (*Id.*).

Of the emails sent, 93 were not delivered, so ALCS sent those individuals the Class Notice on May 9, 2024, by first-class United States mail. (*Id.*). As of June 4, 2024, 73 of the 397 Class Notices mailed were returned by USPS. (*Id.* at ¶ 5). ALCS searched those individuals against a reputable third-party database to find valid addresses for remailing, and, between May 2, 2024, and May 21, 2024, 30 Class Notices were remailed to updated addresses – none of which were returned by USPS. (*Id.*). Of the 2,604 Class Members, ACLS was unable to locate a valid mailing or email address for only 43 individuals. (*Id.* ¶ 6). Put differently, ACLS provided direct notice via either regular mail or electronic mail to 2,561 Class Members (**98.35%**). (*Id.*).

The parties also established a settlement website (www.walgreensfcrasettlement.com). (*Id.* at ¶ 7.) This website, which became active on April 23, 2024, provided further information as stated in the Class Notice, including downloadable copies of important case filings, key dates and deadlines, and general FAQs. (*Id.*). Additionally, Class Members could update their address on the website and file their claims online. (*Id.*).

Courts routinely approve direct notice plans that reach at least 80% of the Class. *In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion reached 80% of class members); *see also Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314, 2016 WL 5107202, at *8 (D.D.C. Aug. 26, 2016) (approving direct notice plan with 87% delivery rate) (citing *In re Zurn Pex Plumbing Prod. Liab.*

*Litig.*, No. 08-MDL-1958, 2013 WL 716008) (D. Minn. Feb. 27, 2013) (approving notice plan that reached 80.6% of class). The parties' multi-faceted plan, which combined direct notice and a website, provided the best notice practicable under the circumstances.

The Class Notice also provided the Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B), and provided straightforward guidance to the settlement website and a toll-free number for additional information regarding how they could opt out of or object to the settlement. (*Id.*); *see In re Automotive Parts Antitrust Litig.,* No. 12-CV-00103, 2016 WL 8200511, at *9 (E.D. Mich. Aug. 9, 2016) ("The purpose of notice in a class action is to 'afford members of the class due process, which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment.'") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Thus, the Class Notice process meets the strictures of Rule 23 and due process, and it should be approved by the Court.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Courts in the Seventh Circuit consider six principles in evaluating the fairness of a proposed class action settlement agreement: (1) the strength of the class's case, (2) the complexity and expense of further litigation, (3) the amount of opposition, (4) the reaction of class members to the settlement, (5) the opinion of competent counsel, and (6) the stage of the proceedings and the amount of discovery that was completed. *Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016).

### A. <u>Strength of the Case</u>

The most important factor in evaluating the fairness of a class action settlement is the strength of the plaintiffs' case balanced against the amount offered. *Synfuel Techs,*

*Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). In determining the strength or value of the plaintiffs' case, the court should estimate the range of possible outcomes and ascribe a probability to each point on the range. *Id.* Then, the court might consider the various risks and costs that accompany continued litigation. *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). "[T]he essence of settlement is compromise," and, accordingly, "courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

Helwig's case rests on the allegation that Walgreens willfully violated Section 1681b(b)(3) of the FCRA. If Helwig were able to demonstrate that Walgreens willfully violated the FCRA, Walgreens would be subject to statutory penalties between $100 and $1,000 with respect to each Class Member. *See* 15 USC § 1681n. Here, all Class Members will automatically receive $100, the statutory minimum. (Doc. 35-2 § 1.42). Those Class Members who submitted a valid claim form also receive a pro rata share of the Claims-Made Payment, which amounts to an additional $888.06 payment for each of those 313 Class Members.

Moreover, Walgreens has maintained throughout the course of this litigation that its policies complied with the FCRA at all times. And, even if Helwig were able to demonstrate that a violation occurred, the FCRA is not a strict liability statute. Thus, any recovery for the Class at trial must be predicated on a finding that Defendants willfully violated the FCRA. *See* 15 U.S.C. § 1681n(a). Although, after *Safeco*, a reckless violation of the FCRA satisfies the willfulness prerequisite for statutory and punitive damages, Class Members here are still faced with the burden of proving Walgreen's conduct was indeed knowing or reckless. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). Thus,

8

while Helwig believes strongly in his case, he also appreciates the litigation risk presented by Walgreen's potential defenses. Walgreens is undoubtedly prepared to contest, among other things, FCRA liability and willfulness.

Furthermore, some courts have been skeptical of statutory damages in class actions and have reduced the awards – even after a plaintiff has prevailed on the merits – on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09C910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case – between $100 and $1,000 per violation – would not violate Defendant's due process rights … such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06C4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Given the parties' arguments, the potential risks and expenses associated with continued prosecution of case, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through protracted litigation, the proposed settlement is adequate. Where trial is uncertain and could result in no recovery at all, the Settlement guarantees recovery for all Class Members – some up to the statutory maximum. Therefore, this factor weighs in favor of final approval.

## B. Likely Complexity, Length, and Cost of Further Litigation

"'Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes

upon already scarce judicial resources.'" *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litigation*, N.D.Ill. No. 06 C 7023, 2016 U.S. Dist. LEXIS 25290, at *25-26 (Feb. 29, 2016) (quoting *Armstrong*, 616 F.2d at 313).

Aside from the potential that either side will lose at trial, the parties anticipate incurring substantial additional costs and months (or years) of additional time in litigating this action. Without the settlement, the parties must engage in costly formal discovery, depositions, dispositive motion practice, and trial preparation. Accordingly, the likelihood of substantial future costs at trial and on appeal favors approving the Settlement. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.")

### C. <u>Class Counsel's Opinion</u>

Further, courts are entitled to "rely heavily on the opinion of competent class counsel." *In re AT&T*, 270 F.R.D. at 350. Here, Class Counsel are competent and experienced FCRA litigators who believe that the Settlement is fair and provides adequate benefits to the Class. (Dooley Decl., Doc 35-1). Moreover, the Settlement only occurred after months of negotiation, including an all-day, in-person mediation with an equally experienced mediator. As a result, the Settlement is not a product of collusion. *Id.*; *see also Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties.") This also weighs heavily in favor of final approval.

### D.    <u>Stage of the Proceeding & Discovery</u>

Consideration of the stage of the proceeding and discovery also focus on preventing a "premature [and even] settlement." *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 834 F.2d 677, 680 (7th Cir. 1987). However, the lack of formal discovery prior to a settlement will not preclude a court's approval of the settlement, so long as the parties are able to fully evaluate the merits of their respective claims and defenses. *See In re AT&T*, 270 F.R.D. at 350. Here, prior to mediation, the parties engaged in substantial informal discovery sufficient to evaluate the dispositive issues in this litigation. Through this discovery, Helwig was fully apprised of Walgreen's procedures as it related to the use of the Disposition Emails and provided with information necessary to evaluate his chances of achieving class certification and proving liability. Thus, this factor also weighs in favor of approval. *See Id.* (recognizing that informal discovery is sufficient to support class settlement approval).

### E.    <u>Reaction and Opposition of the Class Members</u>

A dearth of opposition to a proposed settlement weighs in favor of approval. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015). Here, the Class Notice fully informed Class Members of all elements of the Settlement, including the compensation available to them, and the amount of any service award and attorney fees to be sought by Helwig and Class Counsel. Class Members who wished to object were instructed in the Class Notice to do so by May 23, 2024. (Jenkins Decl. ¶ 11). No objections were received by that date. (*Id.*). In fact, ***no objections were received at all***, even after the due date. Additionally, as of June 4, 2024, only one individual has opted out of the Settlement. The complete lack of any opposition supports a finding of reasonableness of the settlement. *See, e.g., Kolinek*, 311 F.R.D. at 495 (granting final approval where only twenty individuals

objected and 151 opted out); *In re Capital One*, 80 F.Supp. 3d at 792 (finding opt-out and objection rate of 0.0032% low enough to support settlement)*; In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Aug. 26, 2013) (finding an opt-out and objection rate of less than 0.01% supportive of the reasonableness of settlement).

## V. THE COURT SHOULD APPROVE PLAINTIFF'S REQUESTED SERVICE PAYMENT AND CLASS COUNSEL'S REQUESTED FEES AND COSTS.

### A. Helwig's requested payment for his service as class representative is reasonable.

A class action plaintiff assumes a risk – should the suit fail, he may find himself liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorney fees. *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876 (7th Cir. 2012) (Posner, J.). The service payment is designed to compensate him for bearing these risks along with time spent participating in the litigation. *Id.* In evaluating a service payment, courts consider "(1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation." *Briggs v. PNC Fin. Servs. Grp.*, No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *6 (N.D. Ill. Nov. 29, 2016).

This litigation would not have been possible without Helwig's dedication, whose service as the class representative was critical to reaching a successful resolution. (Dooley Decl., ¶¶ 14-15, attached as **Exhibit B**) Helwig devoted a substantial amount of time to supporting the prosecution of the case and protecting the Class Members' interests.

Additionally, Helwig remained in close contact with Class Counsel throughout the litigation and was always available to discuss strategy and resolution when required.

Here, the Stipulation of Settlement proposes a $15,000 service payment to Helwig, which is comparable with other awards in this Circuit. *See, e.g., Briggs*, 2016 U.S. Dist. LEXIS 165560 at *9 (awarding $12,500 each to two plaintiffs); *In re Sw. Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735 at *30 (approving $15,000 award for two class representatives because of active participation in litigation); *see also* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1333 (2006) (finding that the mean incentive award in consumer class actions is approximately $29,000).

### B. The Court Should Award Class Counsel Requested Attorney Fees and Litigation Expenses.

Rule 23(h) allows the Court to award "reasonable attorney's fees ... that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Stipulation of Settlement provides that Class Counsel may request $750,000 for attorney's fees and costs to be paid separately by Walgreens from the funds paid to Class Members. (Doc. 35-2 § 1.42(c)). Put another way, the attorney's fees and costs do not reduce or detract from the amount made available to the Class. Indeed, attorney fees were separately negotiated by Class Counsel after first reaching an agreement on payments to Class Members.

Class Members were notified that Class Counsel would request this amount, and none voiced an objection to the request fee or to the Settlement whatsoever. (Jenkins Decl. ¶ 11). Furthermore, the fact that no Class Members have objected to the any part of the Settlement speaks to the Class's approval of Class Counsel's work on the matter, for which they should now be adequately compensated. *See Levitt v. Southwest Airlines Co.*

13

(*In re Southwest Airlines Voucher Litig.*), 799 F.3d 701, 712 (7th Cir. 2015) ("When counsel come away from the negotiating table with everything the client could hope for, they should be compensated accordingly.").

Indeed, the award of attorney fees in this case is unique because the Class Members who submitted a valid Claim Form will receive $988.06, while the maximum statutory penalty for willful violations under the FCRA is $1,000. Moreover, since attorney fees are not deducted from Class Member payments, there is no conflict of interest between the Class and Class Counsel in approving the fee award. *See Id.* ("[W]hat has eased both the district court's and our concerns about the risk of self-dealing by class counsel, is that the class members will receive essentially everything they could have hoped for.").

       i.   <u>Class Counsel's Award is Reasonable Because the Class Members Have Received Nearly the Maximum Damages Allowed by Law.</u>

Courts tend to scrutinize fee awards because of the inherent conflict of interest between class members and class counsel. *Levitt*, 799 F.3d at 711. In typical settlements, a larger award to class counsel implies a smaller award to the class members – and the defendant agrees to paying the moderate sum regardless of who receives it. *Id.* However, the fee award here is atypical because the fund for Class Counsel's fee is independent of the fund for Class Members (*see* Doc. 35 § 1.42(c) (Class Counsel fund) & § 1.42(a) & (b) (Class Member fund)).

The Seventh Circuit in *Levitt v. Southwest Airlines Co.* found that conflict of interest concerns are absent from settlements where the class members "will receive essentially everything they could have hoped for." *Id.* There, class members made claims against the airline for the replacement of vouchers for free drinks on flights. *Id.* at 704. Class counsel secured a settlement with the airline whereby each class member would

receive a replacement drink voucher. *Id*. The settlement agreement also allowed class counsel to see $3 million in attorney fees. *Id*. at 711. Objectors took issue with (i) the ratio of the class relief to class counsel award and (ii) "clear-sailing" and "kicker" clauses.

First, the objectors believed the airline *could have* paid the class members cash relief in addition to the replacement voucher if the class counsel award had not been so high. *Id*. The Seventh Circuit rejected this argument, however, because the class members were already receiving all the relief they had any hope of receiving had they achieved a total victory at trial. *Id*. at 711-12. There was no reason to believe that class counsel's award detracted whatsoever from the class member's relief. *Id*. at 12 ("No class members have legitimate or even plausible claims to more than they will receive under the settlement.").

Second, the Court found that the "clear-sailing" and "kicker" clauses did not make the settlement unfair. *Id*. at 712-13. Per the settlement, the airline agreed not to contest a fee request up to $3 million (a clear-sailing clause), and any reduction from the requested fee benefited the airline rather than the class (a kicker clause). *Id*. Nonetheless, the Seventh Circuit did not find these clauses *per se* unfair because the settlement makes the class whole. 799 F.3d at 712-13 ("[I]t is hard to imagine the class receiving any better result after further negotiations or a trial."). Ultimately, the Seventh Circuit upheld the approval of the settlement as fair and reasonable. *Id*.

Here, there are no concerns about an unfair award of attorney fees because all Class Members will receive a $100 payment and those who submitted valid Claim Forms will receive an additional $888.06. Simply put, this is a settlement is both fair and reasonable, and Class Counsel should be compensated accordingly. *See Southwest*, 799 F.3d at 712 ("It is an exceptional settlement that actually makes the class whole … [class counsel] should be compensated accordingly.")

ii. <u>Class Counsel's Award is Reasonable Under the Percentage-of-the-Fund Measure.</u>

Notably, the FCRA is a fee-shifting statute such that a prevailing plaintiff is entitled to a separate award for attorney fees and costs. *See* 15 U.S.C. § 1681n. Although Class Counsel are not requesting fees from a traditional common fund where any award is taken from class member payments, the requested fee is nonetheless approximately one-third of Walgreen's total financial commitment to resolve the litigation. This serves as a contextual assurance that the fee is in line with those approved in other consumer class action cases.

For example, to measure a fee award's reasonableness, courts look to either the lodestar method or the percentage-of-recovery method – the latter being the preferred method. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *Leung*, 326 F.R.D. at 199 (percentage-of-recovery is preferrable to the more difficult lodestar method); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund.").

When courts chose the percentage-of-recovery measure, lodestar cross-checks have fallen into disfavor as "'unnecessary, arbitrary, and potentially counterproductive.'" *Schulte*, 805 F. Supp. 2d at 598 n.27 (quoting *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *10 (S.D. Ill. Nov. 22, 2010)). "The client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced." *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-980 (7th Cir. 2003); *In re Comdisco Sec. Litig.*, 150 F.Supp.2d 943, 948 n.10 (N.D. Ill. 2001) ("To view the matter through the lens of free market

principles, [lodestar analysis] (with or without a multiplier) is truly unjustified as a matter of logical analysis.")

The goal of the calculation is to "recreate the market" and award fees at a structure that the lawyer and client would have agreed to. *Taubenfeld*, 415 F.3d at 599. The market price for attorney services in this Circuit ranges from 33% to 40% of recovery. S*ee, e.g., Gaskill*, 160 F.3d at 362 ('the typical contingent fee contract is between 33 and 40 percent'). *See George v. Kraft Foods Glob., Inc.*, No. 1:08-cv-3799, 2012 U.S. Dist. LEXIS 166816, at *8 (N.D. Ill. June 26, 2012) ("'[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment."); *Hale v. State Farm Mut. Auto. Ins. Co*., No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *35 (S.D. Ill. Dec. 13, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."); *Leung v. XPO Logistics, Inc*., 326 F.R.D. 185, 202 (N.D. Ill. 2018) (awarding 33.3% of the net fund); *Allen v. JPMorgan Chase Bank, NA*, 13-cv-8285 (N.D. Ill. Oct. 21, 2015), ECF No. 93 ¶ 18 (awarding 33% of the net fund); *Vergara v. Uber Techs., Inc*., 15-cv-6942 (N.D. Ill. Feb 26, 2018), ECF No. 111 at 3-4 (awarding 30%); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *55 (N.D. Ill. Aug. 29, 2016) (awarding 30% of the net settlement); *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 237 (N.D. Ill. 2016) (awarding 30% of the first $10 million of the net fund); *Kolinek*, 311 F.R.D. at 503 (awarding 30% of the net fund plus a 6% risk adjustment); *Taubenfeld v. Aon Corp*., 415 F.3d 597, 599 (7th Cir. 2005) (holding that district court was within its discretion in awarding lead counsel 30% of a $7.25 million settlement fund); *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09 C 5601, 2015 U.S.

Dist. LEXIS 95918, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding one-third of common fund in multimillion dollar TCPA class action).

Courts commonly approve fee awards based on the whole settlement fund, minus only administrative costs and any service payment. *See, e.g., Chambers*, 2021 U.S. Dist. LEXIS 92151, at *3; *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ("'[L]awyer[s] who recover[ ] a common fund . . . [are] entitled to a reasonable attorney's fee from the fund as a whole.'"); *Pearson v. NBTY, Inc.,* 772 F.3d 778, 781 (7th Cir. 2014) (excluding only administrative costs and incentive award from full settlement amount); *Leung*, 326 F.R.D. at 200 (same).

An award of attorney's fees should be calculated based on the full benefit to the class members, even if some choose not to participate. *McKinnie v. JP Morgan Chase Bank*, N.A., 678 F.Supp.2d 806, 815 (E.D.Wis.2009). Indeed, the benefit conferred to absentee class members "is a benefit in the fund created by the efforts of the class representatives and their counsel." *Boeing Co.*, 444 U.S. at 480 (holding that, where a class member need only prove their membership in the class to receive funds, those class members who fail to exercise their right must still contribute to the costs of the litigation – specifically attorney's fees); *see also* Conte at §14:6, p. 570 (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed. (emphasis added)).

Courts in this Circuit and across the country have approved attorney fee awards based on the entire settlement value, even when a portion was not claimed by class members. *See, e.g., Leung* at 200 (awarding 33.3% despite an actual claim rate of 13.74%); *Chambers* at *3; *McKinnie* at 815; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on this basis of the total funds made available, whether claimed or not."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund though a portion reverted to the defendant); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that the district court abused its discretion by awarding attorneys' fees as one-third of the $10,000 claimed against the common fund rather than awarding one-third of the entire $4.5 million settlement fund in a case where unclaimed funds reverted to the defendant).

In *Boeing*, class members brought a suit against the airline for failing to give them proper notice of a debenture redemption option. *Boeing Co.*, 444 U.S. at 473. Class counsel recovered a fund for the benefit of every member of the class, but action by the class members was still required to receive their portion of the funds. *Id.* at 470-80. The Supreme Court held that since class members who failed to make a claim still had a right to share in the common fund, those absentee class members still ought to contribute to the payment of class counsel who won them that right. *Id.* at 480. All class members had an undisputed and mathematically ascertainable claim to part of the lump-sum recovered by class counsel, and, therefore, class counsel's award is properly calculated based on the whole common fund. *Id.* at 473.

19

In *Leung*, class counsel secured a gross settlement of $7 million for over 300,000 class members. *Leung*, 326 F.R.D. at Doc. 149, p. 7[4]. Per the parties' settlement agreement, the defendant agreed to pay $298,321 in administrative costs, a $10,000 service payment, and the remaining $6,691,679 to class members. *Id.* However, only 13.74% of the class members made valid and timely claims. *Id.* This Court did not reduce the fee award simply because class members failed to submit a simple claim. This Court awarded fees in the amount of $2,230,559.67, equal to one-third of the whole fund minus only administrative fees and service payment. *Leung*, 326 F.R.D. at 203; *see also*, *Boeing Co.*, 444 U.S. at 473; *Levitt*, 799 F.3d at 708 ("Under the 'common fund' doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion of the fund that is made available to the class rather than the amount actually claimed by the class.")

Accordingly, Class Counsel's award of $750,000 should be approved as fair and adequate compensation for the fair and reasonable result secured for the Class.

## C. Class Counsel's requested reimbursement for litigation expenses should be approved.

A court may award the reimbursement of "all reasonable" litigation costs and expenses in a class action. *Martin v. Caterpillar Inc.*, No. 07-cv-1009, 2010 U.S. Dist. LEXIS 145111, at *15 (C.D. Ill. Sep. 9, 2010) (citing *International Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 533, 26 L. Ed. 1157 (1982)); *see also* Fed. R. Civ. P. 23(h).

Class Counsel requests a reimbursement of $12,803.49 in costs. (Dooley Decl., ¶ 13). These costs account for court costs, filing fees, shipping and travel costs, and the

---

[4] Taken from Vincent Leung's Motion for Final Approval. *See also*, Leung v. XPO Logistics' Settlement Agreement, Doc. 149-1.

mediation fee. (*Id.*). The Settlement permits Class Counsel to request up to $30,000.00 "from the Claims-Made Payment portion of the Common Fund." (Doc. 35-2, ¶1.77). This amount will not impact the gross sum payable to Class Members, including those who made a claim.

## VI. CONCLUSION

For these reasons, Helwig and Class Counsel respectfully requests the Court enter an Order:

    i.   Granting Final Approval of the of Settlement (Doc. 35-2);

   ii.   Approving a service payment to Helwig in the amount $15,000;

  iii.   Approving Class Counsel's requested attorney fees of $750,000;

  iv.   Approving reimbursement to Class Counsel for its litigation expenses totaling $12,803.49; and,

   v.   Approving payment of Settlement Administration Expenses totaling $27,222.00.

Respectfully submitted,

DOOLEY, GEMBALA, McLAUGHLIN
& PECORA CO., LPA

By:   */s/ Matthew A. Dooley*
       Matthew A. Dooley (OH 0081482)
       Stephen M. Bosak (OH 0092443)
       Patrick M. Ward (IL 6284215; OH 0095420)
       Michael R. Briach (OH 0097986)
       5455 Detroit Road
       Sheffield Village, Ohio 44054
       Telephone:  (440) 930-4001
       Facsimile:   (440) 934-7208
       Email:      mdooley@dooleygembala.com
                   sbosak@dooleygembala.com
                   pward@dooleygembala.com
                   mbriach@dooleygembala.com
       *Counsel for Helwig and the Class*